IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THELMA J. KABANA,

      Plaintiff,

v.                                                    Civil Action No. 3:20cv781

UNITED STATES OF AMERICA,

      Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant United States of America's (the

"United States") Motion to Dismiss (the "Second Motion to Dismiss" or "Motion") pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  (ECF No. 15.)  Plaintiff Thelma J.

Kabana responded to the Motion, (ECF No. 17), and the United States replied, (ECF No. 19).

This matter is ripe for adjudication.  The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[2]  For

the reasons stated below, the Court will grant the Motion.

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be
granted."  Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Kabana brings this action
under the Federal Torts Claim Act (the "FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671 *et seq.*
   The FTCA states in pertinent part:

    [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims
    against the United States[] for . . . personal injury or death caused by the negligent
    or wrongful act or omission of any employee of the Government while acting within
    the scope of his office or employment, under circumstances where the United

## I. Factual and Procedural Background

This action arises from injuries Kabana sustained on October 28, 2019, when she fell on a public concrete walkway during a visit to the Fredericksburg & Spotsylvania National Military Park (the "Park") in Spotsylvania, Virginia. In her Amended Complaint, Kabana seeks compensation for her injuries under the FTCA,[3] alleging gross negligence in connection with the United States's maintenance of the concrete walkway where she fell. On May 28, 2021, Kabana filed the Amended Complaint against the United States following this Court's dismissal of her initial Complaint. (ECF No. 13.)

### A.   Factual Allegations[4]

The United States owns and operates the Park through the National Park Service, an agency within the United States Department of the Interior ("DOI"). The Park offers visitors—at not cost—attractions and amenities, including "a concrete courtyard about twenty feet wide"

---

States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA applies here because Kabana seeks money damages for personal injuries caused by a United States employee or agent's gross negligence in maintaining a public walkway on federal property located in Spotsylvania, Virginia. (ECF No. 14 ¶ 23.)

[3] The FTCA waives sovereign immunity, allowing plaintiffs to bring suits "only with respect to a certain category of claims," *Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009) (internal quotations omitted), including "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b); *see also Federal Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994). "The scope of this waiver is limited by . . . specific exceptions." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

[4] For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

underneath a pavilion. (*Id.* ¶ 13.) The pavilion provides restrooms, presents historical information, and displays a large map of the battlefield.

"The courtyard paving consists of concrete flagstone sections about four feet square" in size. (*Id.* ¶ 14.) "[T]he concrete surface of the courtyard is all similar textures and shades of gray." (*Id.* ¶ 15.) According to Kabana, a "construction joint" in the concrete pavement contains a depression, and two of the concrete flagstones meet at "the lowest point of depression." (*Id.* ¶¶ 15–17.) This created "a sudden, obscured drop-off in elevation between concrete slabs within a few feet of the map display, the difference in elevation being about 1.25 inches, or between one inch to one and one-half inches." (*Id.* ¶ 16.)

On October 28, 2018, at around 3:00 p.m., Kabana visited the Park for the first time. As she "walked in a normal manner by the large map display," Kabana "unexpectedly stepped on the edge of the uneven drop-off of the concrete slab" so that "only half of her foot was supported, causing her to lose her balance, fall and suffer significant injury." (*Id.* ¶ 20.) Specifically, Kabana sustained "a left ankle fracture that has required three surgeries . . . as well as severe lumbar strain, and multiple bruises and contusions." (*Id.*) Kabana alleges that she "lost her balance and fell because of the sudden change in elevation at the construction joint between the two concrete slabs, and this hazard was not readily identifiable by a casual pedestrian such as" herself. (*Id.* ¶ 26.)

Kabana states that the United States knew of the uneven drop in the concrete because this "unreasonable and dangerous condition was present for an extended period of time at least a year or more prior to the incident." (*Id.* ¶ 21.) She says that the concrete "settled due to erosion of the subgrade material, from being subjected to heave during freeze and thaw cycles," and "an extended period of time necessarily had passed in order for the concrete slabs to have reached

3

this state of misalignment." (*Id.* ¶ 24.) Kabana adds that the United States "actually saw and observed the tripping hazard based on the number of times the agents, employees, and representatives would have been at that site . . . providing . . . knowledge of the dangerous condition of the concrete in the pavilion." (*Id.* ¶ 30.) Indeed, "multiple other persons have fallen and/or tripped due to this . . . unreasonable and dangerous condition prior to the [instant] incident," including, on information and belief, "at least two other" people who tripped "on the same day as . . . but prior to" Kabana's fall. (*Id.* ¶¶ 22, 36.)

Kabana avers that the United States, despite having knowledge of the uneven drop-off in the concrete slabs, "deliberately made a decision to not make any attempt to repair, remedy, remediate, correct, or otherwise fix said defect/tripping hazard, as evidenced by the uniform color texture, and appearance of the concrete at the time and place of" Kabana's fall. (*Id.* ¶ 34.)

**B.** **Procedural Background**

On March 13, 2020, Kabana submitted a Standard Form 95[5] to the National Park Service, seeking compensation for the injuries she sustained from the October 28, 2019 fall. (*See* ECF No. 14-1, at 1.) On May 11, 2020, the DOI notified Kabana that her claim had been denied. (ECF No. 14-2, at 1.) In the notice, a DOI attorney informed Kabana that "the government is [not] legally responsible for [her] accident in accordance with the FTCA and Virginia law."[6] (*Id.*) The notice apprised Kabana of her right to "file suit in an appropriate United States District

---

[5] To properly present an administrative claim under the FTCA, a claimant must execute a "Standard Form 95 or other written notification of [the] incident." 28 C.F.R. § 14.2.

[6] In this action brought under the FTCA, the Court must apply the law of the place "where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Cibula v. United States,* 551 F.3d 316, 319 (4th Cir. 2009). The parties agree that Virginia law governs this matter. (*See* ECF No. 16 at 2; ECF No. 17 at 2.)

Court" within "six (6) months after the date of mailing of this letter" if she felt "dissatisfied with this determination." (*Id.* 2.)

On October 6, 2020, five months after receiving the notice of denial, Kabana timely filed her initial Complaint. On December 11, 2020, the United States filed a Motion to Dismiss for failure to state a claim (the "First Motion to Dismiss"). (ECF No. 9.) In support of its First Motion to Dismiss, the United States argued that the Virginia recreational land use statute, Va. Code § 29.1-509,[7] (the "VRUS") barred Kabana's claim of ordinary negligence, and that she otherwise fails to state a claim of gross negligence.

On May 17, 2021, the Court granted the United States's Motion to Dismiss without prejudice. (ECF No. 13.) As explained in the Memorandum Opinion accompanying its May 17, 2021 Order, the Court dismissed Kabana's initial Complaint because she did "not allege facts that would allow the Court to reasonably infer the United States acted with gross negligence," as required by the Virginia recreational land use statute. (ECF No. 12, at 6.)

---

[7] Neither party disputes, and the Court earlier found that, the Virginia recreational land use statute governs this action. That statute provides in pertinent part:

> A landowner shall owe no duty of care to keep land or premises safe for entry or use by others for . . . sightseeing . . . [or] for any other recreational use . . . . No landowner shall be required to give any warning of hazardous conditions or uses of [or] structures on . . . such land or premises to any person entering on the land or premises for such purposes, except as provided in subsection D.
>
> . . .
>
> Nothing contained in this section . . . shall limit the liability of a landowner which may otherwise arise or exist by reason of his gross negligence or willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. The provisions of this section shall not limit the liability of a landowner which may otherwise arise or exist when the landowner receives a fee for use of the premises or to engage in any activity described in subsection[] B . . . .

Va. Code § 29.1-509(B) and (D).

On May 28, 2021, Kabana filed her Amended Complaint. (ECF No. 14.)  In the

Amended Complaint, Kabana brings a single count for gross negligence, alleging that the United

States's "operation and maintenance of the national military park . . . create[d] or allow[ed] to

exist an unreasonable, dangerous tripping or fall hazard on the premises in the form of the

uneven, obscured, cracked, sunken, or otherwise dangerous concrete walkway for an extended

and lengthy period of time." (ECF No. 14 ¶ 23.)  Kabana seeks $600,000 of compensatory

damages, plus interest, for the United States's gross negligence.  (*Id.* 9.)

The United States filed its Second Motion to Dismiss.  The matter is fully briefed.  For

the reasons articulated below, the Court will grant the Second Motion to Dismiss with prejudice.

## II.  Standards of Review:  Rule 12(b)(6)[8]

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

---

[8] The United States filed its Motion to Dismiss pursuant to Rule 12(b)(6) and Rule
12(b)(1).  In its Motion to Dismiss, the United States appears to argue, in part, that Kabana fails
to state a claim under the VRUS, and therefore, that this Court lacks jurisdiction over this matter
pursuant to Rule 12(b)(1).  (*See* ECF No. 16, at 6–7, 10–11.)  This argument is misplaced, as
whether Kabana fails to state a claim is an argument more properly made through a Rule
12(b)(6) motion to dismiss.  The contention that this Court lacks subject matter jurisdiction over
this matter *because* Kabana fails to state a claim under Virginia law is superfluous.  More
importantly, this is not one in which the jurisdictional facts are inextricably intertwined with
those central to the merits of the case—they merely identify the statute to be applied. *Lutfi v.
United States*, 527 F. App'x 527, 242–43 (4th Cir. 2013).  The Court will treat the United
States's Motion to Dismiss as one made pursuant to Rule 12(b)(6).
    On the other hand, Plaintiff's argument that because the United States filed its Motion to
Dismiss, at least in part, pursuant to Rule 12(b)(1), this Court should "assume jurisdiction and
decide the matter as one for summary judgment" falls flat. (ECF No. 17, at 3–5.)  Kabana
misapplies legal precedent in her argument.  Given the precedent to which this Court must turn,
discovery could not likely alter the Court's decision.  As discussed in Part III, as a matter of law,
the United States's failure to remedy an approximately one and one quarter inch difference in
elevation between concrete slabs does not constitute gross negligence.

(1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for

relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief

are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate

some factual enhancement within the complaint to cross the line between possibility and

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)

(internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a

reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S.

at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). This analysis is context-specific

and requires "the reviewing court to draw on its judicial experience and common sense."

*Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual

allegations to be true and determine whether, viewed in the light most favorable to the plaintiff,

they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington*,

684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must

accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable

inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### III.  Analysis

Kabana does not plausibly state a claim under the FTCA because the Amended

Complaint does not allege facts (even read favorably, treated as true, and considered alongside

the photographic evidence) that would enable the Court to reasonably infer that the United States

7

acted with *gross* negligence in not repairing, or painting with a yellow color, or otherwise warning visitors about the concrete walkway.  The Court will grant the Second Motion to Dismiss.

### A.    Legal Standard:  The Virginia Recreational Land Use Statute and Gross Negligence Under Virginia Law

As the Court explained in its May 17, 2021 Memorandum Opinion, the Virginia recreational land use statute provides the "source of substantive liability" for Kabana's FTCA claim, 28 U.S.C. § 1346(b)(1).  (*See* ECF No. 12, at 7.)  Under the Virginia recreational land use statute, "a landowner who makes its property freely available to the public for recreational purposes, including 'sightseeing,' *has no liability except for 'gross negligence or willful or malicious failure to guard or warn against a dangerous condition, use, or structure, or activity.*'" *Lutfi v. United States*, 527 F. App'x 236, 240 (4th Cir. 2013) (emphasis added) (quoting Va. Code § 29.1-509(B) and (D)).  Kabana's FTCA claim is governed by the VRUS because the United States permits recreational use of the Park free of charge.  Kabana's recovery pursuant to the FTCA depends on whether the United States would be liable to Kabana for its gross negligence in maintaining and operating the Park. *See* 28 U.S.C. § 1346(b)(1); *see also Lutfi*, 527 F. App'x at 241–42 ("There is no dispute that the jurisdictional and merits issues are 'inextricably intertwined' in this case, as the question of jurisdiction under the FTCA turns entirely on the question of whether the United States could be liable to [the claimant] under Virginia law." (citation omitted)).

This is an extremely high standard.  Under Virginia law, "[g]ross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)).

"It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care," and it "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* (quoting *Chapman v. City of Virginia Beach*, 475 S.E.2d 798, 800–01 (Va. 1996); *Cowan*, 603 S.E.2d at 918).

"Ordinarily, the question [of] whether gross negligence has been established is a matter of fact to be decided by a jury.  Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Id.* (quoting *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987)).  Thus, at the motion to dismiss stage, the inquiry is:  Could reasonable minds differ as to whether the defendant acted in a grossly negligent manner?  If reasonable minds could only conclude that the defendant's conduct did not amount to gross negligence, then the court must grant the motion to dismiss.

**B.**    **Because Kabana Fails to State a Claim of Gross Negligence Under Virginia Law, Her FTCA Claim Falters**

Even reading her Amended Complaint favorably, Kabana has not alleged facts, even at this procedural juncture, enabling this Court to conclude that the United States's conduct amounted to gross negligence.  Therefore, her claim must fail.

To survive Defendant's Motion to Dismiss, Kabana must establish that the United States was not merely negligent, but instead *grossly* negligent in its maintenance of the concrete walkway.  The Virginia Supreme Court (and its predecessor, the Virginia Supreme Court of Appeals), has decided many cases in which it found nearly a similar "drop" does not even constitute *ordinary negligence*.  For instance, the Virginia Supreme Court, albeit long ago, held that differences between a sidewalk's concrete slabs of as much as one and one-eighth inches

9

cannot constitute actionable negligence[9] as a matter of law.  *See City of Roanoke v. Sutherland*, 167 S.E. 243 (Va. 1933).

Courts continue to follow that precedent.  *See City of Newport News v. Anderson*, 223 S.E.2d 869 (Va. 1976) (holding that a "chip or depression" in a sidewalk about one inch deep could not support a claim for negligence against a city); *Med. Ctr. Hosps. v. Sharpless*, 331 S.E.2d 405 (Va. 1985) (holding a sidewalk elevation differential of one-half inch insufficient to support a negligence claim); *see also Childress v. City of Richmond*, 24 S.E.2d 419 (Va. 1943) (holding that a city's failure to remedy a street hole that was approximately one and five eighths inches deep was not actionable negligence).  Notably, just last year, in a case concerning alleged negligent maintenance of stairs, the Virginia Supreme Court acknowledged that *"slightly uneven sidewalks are so common—and thus foreseeable to the ordinary person—that they cannot justify the imposition of tort liability." AlBritton v. Commonwealth*, 853 S.E.2d 512, 522, 522 n.11 (Va. 2021) (emphasis added) (citing *Sutherland* favorably).

Viewing the photographs before the Court and despite Kabana's dramatic description of the elevation's characteristics, the Court cannot find that a reasonable person could conclude that its presence, or the failure to fix or to warn about it, amounts to a complete neglect of the safety of others or a heedless and palpable violation of a legal duty.  *See AlBritton v. Commonwealth*, 853 S.E.2d 512, 522, 522 n.11; *Sutherland*, 167 S.E. 243; *Anderson*, 223 S.E.2d 869; *Med. Ctr. Hosps.*, 331 S.E.2d 405; *Childress*, 24 S.E.2d 419.  The United States's failure to address the danger posed by the difference in elevation does not amount to gross negligence.  Given the standard this Court must apply, Kabana's claim must fail.  A difference in elevation of one

---

[9] Virginia's modern recreational use statute requires that municipal landowners refrain from ordinary negligence, *see* Va. Code § 15.2-1809, not the gross negligence standard this Court must apply.

eighth of an inch—the difference between the drop in this case and that discussed in Virginia law, *see Sutherland*, 167 S.E. 243 at 244, 246, does not transform the conduct here from non-actionable to grossly negligent.  Reasonable minds could not conclude otherwise.  *See Elliott*, 791 S.E.2d at 732 (quoting *Frazier*, 362 S.E.2d at 691).

This is true even as to the Government's failure to mark with paint or warn about the crack in the concrete walkway.[10]  Reasonable minds could only conclude that the Government's actions in this case did not involve a "degree of negligence that would shock fair-minded persons." *Id.* (quoting *Cowan*, 603 S.E.2d at 918); *see also Wilkins v. Montgomery*, 751 F.3d 214, 229 (4th Cir. 2014) ("[T]he Virginia cases allowing gross negligence claims to proceed to trial are . . . egregious." (citing *Koffman v. Garnett*, 574 S.E.2d 258, 260 (Va. 2003); *Nichols v. Brizendine*, 169 S.E.2d 457, 460 (Va. 1969))).  A finding to the contrary would make landowners "insurer[s] of the safety of persons travelling [on their land], which is not, and ought not, to be the law." *Childress*, 24 S.E.2d at 421.  The VRUS serves to do precisely the opposite—"to encourage owners of land to allow the public to use their private land for recreational purposes without the fear that they will be sued for allegedly negligent acts." *Hiett v. Barcroft Beach, Inc.*, No. 85646, 1990 WL 751428, at *3 (Va. Cir. Ct. 1990); *see also Shoemaker v. Funkhouser*,

---

[10] Even presuming that the United States deliberately chose not to act on the hazard created by the concrete walkway (a topic Kabana discusses at considerable length), this would not alter this outcome.  Even if the United States acted deliberately, a failure to remedy or warn about a concrete walkway elevation differential of approximately one and one quarter inches does not constitute gross negligence. *See City of Lynchburg v. Brown*, 613 S.E.2d 407, 410 (Va. 2005) (stating that while "[d]eliberate conduct is important evidence on the question of gross negligence," by itself, deliberate conduct cannot establish gross negligence); *Elliott*, 791 S.E.2d at 732 (quoting *Cowan*, 603 S.E.2d at 918; *Chapman*, 475 S.E.2d at 800–01) (describing gross negligence pursuant to Virginia law).

856 S.E. 2d 174, 181 (Va. 2021) ("Th[e VRUS] operates in derogation of the common law.").

The statute could not be more clear:

> A landowner shall owe no duty of care to keep land or premises safe for entry or use by others for . . . sightseeing . . . [or] for any other recreational use . . . . No landowner shall be required to give any warning of hazardous conditions or uses of [or] structures on . . . such land or premises to any person entering on the land or premises for such purposes, except [in circumstances inapplicable here, such as charging a fee].

Va. Code § 29.1-509(B).

Moreover, Kabana cites cases in her Opposition to Defendant's Motion to Dismiss that are inapt because they use the test for ordinary negligence, not gross negligence. For example, in the early twentieth century case *City of Richmond v. Rose*, the plaintiff sued a *city*. *See City of Richmond v. Rose*, 102 S.E. 561, 562 (Va. 1920). In its opinion upholding a jury's verdict against the city for a fall caused by an uneven sidewalk, the court noted that "a municipal corporation . . . is charged with the exercise of due and reasonable care in keeping and maintaining its streets, so as to prevent injury to persons traveling over them." *Id.* at 566 (citation omitted). Thus, the city owed the plaintiff a duty of reasonable care (a duty not to engage in ordinary negligence)—a higher standard of care than a duty to refrain from gross negligence. *See id.*; *cf. Quisenberry v. Huntington Ingalls Inc.*, 818 S.E.2d 805, 809–10 (Va. 2018) (discussing ordinary negligence in the context of Virginia law). Consequently, with regard to the instant matter—one that asks whether the United States was grossly negligent— *Rose* is inapposite. And the other cases cited by Kabana are even less pertinent—often involving incomparable circumstances and conduct "far more egregious" than that in this litigation. *Wilkins*, 751 F.3d at 229 (citations omitted); *see, e.g.*, *Chapman*, 475 S.E.2d at 799–800; *Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 713 (E.D. Va. 2019).

Accordingly, because Kabana's allegations, even read favorably, do not demonstrate that the United States's conduct amounted to gross negligence—conduct "that would shock fair-minded persons," *Elliott*, 791 S.E.2d at 732 (quoting *Cowan*, 603 S.E.2d at 918)—the Court will dismiss her Amended Complaint, (ECF No. 14).

### IV.  Conclusion

For the foregoing reasons, the Court grants the Second Motion to Dismiss, (ECF No. 15), and dismisses the Amended Complaint, (ECF No. 14), with prejudice.

An appropriate Order shall issue.

Date: 3/31/2022
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

13